**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CASIO COMPUTER CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO, <br><br> Defendants. | Case No. 24-cv-11010 <br><br> Hon. Judge Matthew F. Kennelly <br><br> Hon. Magistrate Judge Jeffrey Cole |

**DEFENDANT NO. 186 AMBAND'S OPPOSED MOTION
TO DISSOLVE OR MODIFY THE PRELIMINARY INJUNCTION ORDER**

Pursuant to ¶ 7 of the Court's Preliminary Injunction Order as to Certain Defendants (ECF # 42, the "PI Order"), Defendant No. 186, identified as "amband" on Schedule A ("Defendant" or "Amband"), respectfully moves the Court to dissolve, or in the alternative, modify the PI Order, on both procedural and substantive grounds.

**I. The Court Should Dissolve the PI Order Because Defendant Did Not Receive Adequate Notice of the Proceedings.**

On the procedural aspect, Plaintiff filed its Motion for Entry of Preliminary Injunction against Amband on November 20, 2024. ECF # 34. Amband received email service of the Summons, Complaint, the Court's TRO order, and the Motion for Entry of Preliminary Injunction and the supporting Memorandum on the same day. Declaration of Jinhao Cao ISO Defendant's No. 186 Amband's Opposed Motion to Dissolve or Modify the Preliminary Injunction Order (filed concurrently herewith) (hereinafter the "Cao Decl.") ¶ 3, Ex. 10. The Court entered the PI Order the very next day – November 21, 2024. ECF # 42. Amband is

operated by a company based in China. Cao Decl. ¶ 2. It could not have engaged U.S. counsel in time to oppose Plaintiff's motion.

The Court has admonished Plaintiff that it "should not delay service of summons until too close to the preliminary injunction hearing or the Court may deny entry of a preliminary injunction due to inadequate notice." ECF # 33. When Plaintiff filed its Motion for Entry of Preliminary Injunction, Plaintiff could have advised the Court that it served Summons and other papers *merely hours before filing* the motion so that the Court could take that into consideration in entering the PI Order. Plaintiff did not do so. *See* ECF # 36 (Declaration of Michael A. Hierl filed concurrently with the PI Motion ECF # 34) (no mention of service dates for any Schedule A defendants).

Because Plaintiff has not heeded the Court's warning and has not taken steps to ensure Amband received adequate notice of the proceedings, the Court should dissolve the PI Order on this procedural defect alone.

## II. The Court Should Dissolve the PI Order Because Plaintiff Has Not Demonstrated A Likelihood of Success on the Merits.

"[A] preliminary injunction is an extraordinary and drastic remedy one that should not be granted unless the movement, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis in original, internal quotations omitted). To obtain a preliminary injunction, a plaintiff has the burden to show that: "(1) without this relief, it will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) it has some likelihood of prevailing on the merits of its claims." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (internal quotations omitted). Likelihood of success on the merits is a prerequisite for preliminary injunctive relief, and if the movant fails to establish it, the Court need not consider the remaining requirements. *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). In

analyzing this question, the Court should not consider the allegations as true or provide Plaintiff with the benefit of the doubt regarding conflicting evidence. *Id.* at 791-92.

Aside from the procedural defect explained above, the Court should also dissolve the PI Order because Plaintiff has failed to show that it has some likelihood of prevailing on the merits of its claims.

Plaintiff's TRO motion makes conclusory allegations that Amband sold "counterfeit" goods. *See* ECF # 12[1] at PageID # 93. Plaintiff's "likelihood of confusion" analysis for its trademark infringement claim relies heavily on the counterfeit allegations. *See, e.g.*, *id*. at PageID # 99 ("[actual confusion] can be inferred because Defendants are selling counterfeit CASIO Products in connection with CASIO Trademarks"). The TRO motion further alleges that Amband's counterfeit goods practiced Plaintiff's design patents. *See id*. at PageID # 100.

Plaintiff supports its sweeping factual allegations against all defendants with a client declaration. *See* ECF # 12-1, ¶ 11 (Declaration of Keishi Takeyama) (Casio, "through visual inspection of the products listed for sale on the website," concluded that Defendants engaged in counterfeiting and infringed Casio's patented designs). For reasons stated below, Plaintiff's allegations against Amband are refuted by the evidence of infringement it gathered and presented to the Court.[2]

---

[1] ECF # 12 is Plaintiff's legal memorandum ISO its *ex parte* motion for entry of a TRO. It sets forth Plaintiff's argument regarding the merits of Plaintiff's infringement claims. ECF # 35 is Plaintiff's legal memorandum ISO its motion for entry of a Preliminary Injunction Order. As is typical in the Schedule A cases, ECF # 35 contends that Plaintiff met the legal requirement to show likelihood of success because the Court has granted earlier its *ex parte* motion for entry of a TRO. ECF # 35 at 4. Defendant therefore cites to relevant portions from the TRO motion to refute Plaintiff's legal arguments supporting the requested injunctive relief.

[2] Defendant's counsel obtained the evidence of infringement through an email request to Plaintiff's counsel. Declaration of Shruti Aggarwal ISO Defendant's No. 186 Amband's Opposed Motion to Dissolve or Modify the Preliminary Injunction Order (filed concurrently herewith) (the "Aggarwal Decl."), at ¶ 3, Ex. 1 (Plaintiff's Evidence of Infringement showing

A.  **Defendant's Accused Product Does Not Practice Casio's Design Patents.**

Plaintiff asserts over a dozen design patents in this case. ECF # 1, ¶ 14; Group Ex. 2, PageID ## 28-44. They all relate to wristwatch designs, except for three patents whose subject matter is "watch case." *Id.* The three design patents teach the designs of a round watch case with a rugged look. ECF # 1 at PageID # 33 (U.S. Pat. No. D685,666), # 35 (U.S. Pat. No. D733,578), and # 36 (U.S. Pat. No. D733,602).

Defendant's accused product is not a wristwatch. It is an accessory for smartwatches. Cao Decl. ¶ 7 & Ex. 1. It has a bumper case[3] and a band. Cao Decl. ¶ 7 & Ex. 11; Aggarwal Decl., Ex. 1 (Evidence of Infringement). The bumper case is rectangular in shape. Cao Decl. ¶ 7 & Ex. 11; Aggarwal Decl., Ex. 1. It has polished surfaces and clean lines. Cao Decl. ¶ 7 & Ex. 11; Aggarwal Decl., Ex. 1. The bumper case is designed specifically for the Apple watches. Aggarwal Decl., Ex. 1 (listing title from Evidence of Infringement stating "amBand Bands Case Compatible with Apple Watch"); Cao Decl. ¶ 7 & Ex. 11. Had Plaintiff purchased the accused product,[4] a side-by-side comparison of the product against Plaintiff's design patents would clearly show that Plaintiff has no likelihood of success on the design patent infringement claim. An exemplary side-by-side comparison is shown below.

---

screenshots of Defendant's Walmart listing) ("Evidence of Infringement"). Plaintiff's evidence of infringement against all Schedule A defendants appears to be filed under seal. It is not available from the link where Plaintiff uploaded the sealed filings. *Id.* at ¶ 5, Ex. 2.

[3] A "bumper case" is generally known as a protective accessory designed for electronic devices whose primary function is to provide shock absorption and protection against accidental drops, impacts, and scratches. *See* https://www.devx.com/terms/bumper-case/. Aggarwal Decl. ¶ 6, Ex. 3.

[4] Plaintiff defines "Infringing Products" as "digital watches" in the Complaint. ECF # 1 at ¶ 3. There cannot be any dispute that Defendant's product does not meet this definition. This casts doubt about Plaintiff's diligence in its pre-suit investigations.

4



| U.S. Pat. No. D733,578, FIG 1 | The Accused Product (Cao Decl. ¶ 10, Ex. 11.) |

### B. Defendant's Accused Product Is Not A Counterfeit.

"Counterfeiting is the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark." *Chi. Mercantile Exch. Inc. v. Ice Clear US, Inc.*, 2021 U.S. Dist. LEXIS 154686, at *47 (N.D. Ill. Aug. 17, 2021) (Kennelly, J.). To establish counterfeiting, Plaintiff must prove that Defendant used a trademark that was (1) spurious; (2) on the goods or services for which the genuine mark is registered; and (3) without plaintiff's authorization. *Id.* at *48; *accord Antetokounmpo v. Paled Prods. LLC*, 2021 U.S. Dist. LEXIS 200681, at *8 (S.D.N.Y. 2021) (A "counterfeit mark" is "a counterfeit of a mark that is registered on the principal register . . . for such goods or services sold, offered for sale, or distributed and that is in use[.]"); *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1026 (E.D. Wis. 2018) ("For infringement to rise to the level of counterfeiting, the defendant's mark must be 'a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use …'"). Defendant's smartwatch accessory product does not

constitute counterfeiting because Casio has not registered the smartwatch accessory goods under the asserted "protection" mark, and Casio has not used the "protection" mark on such goods in commerce. Below is Defendant's detailed analysis.

As a threshold matter, it is undisputed that the accused product is an accessory designed for smartwatches. The Evidence of Infringement shows the accused product was offered for sale under the listing title "amBand Bands Case Compatible with Apple Watch 44mm 45mm, Moving Fortress Rugged Metal Bumper Men Designer TPU Military Strap Protective Cover Compatible for iWatch 44mm 45mm Series 7/SE/6/5/4 Gold."[5] Aggarwal Decl., Ex. 1. The product was described as a "[w]atch band … specifically cut to ensure easy access to buttons and switches [of Apple Watches]." *Id.* at Ex. 1, pg. 2 ("Product details"). It had a "high-quality stainless steel case" with a "soft TPU buffer layer" for Apple Watch protection. *Id.* Furthermore, it is undisputed that Plaintiff accuses Defendant's product of infringing the registered word mark "protection" only. *See id.* at Ex.1, pg. 1 (marking with a green box the word "protection" in the accused Walmart Listing product demo photo).

A closer review of the trademark registration document demonstrates Casio has not registered the mark for smartwatch accessory products. Specifically, Casio registered the "protection" mark under international classes 9 and 14. ECF # 1 ¶ 27. The registration identifies the following goods under each class:

> For class 009: "Smart watches; wearable devices in the nature of smartwatches with integrated global positioning systems, compasses, barometers, altimeters, pedometers, heart rate meters, accelerometers and thermometers; batteries; battery chargers; charging cables; electrical adapters; earphones and headphones; downloadable mobile applications and software for processing, reviewing and editing data from smart watches and mobile devices featuring global positioning

---

[5] Although the Walmart listing pages for the other product variations are no longer available, there is no dispute that the product at issue is an accessory designed for smartwatches. *See* Cao Decl. ¶¶ 7-10 & Ex. 11 (photos of the three variations of the same accessory product).

>systems, compasses, barometers, altimeters, pedometers, heart rate meters, accelerometers and thermometers; smart watches having a radio-controlled function; replacement parts and fittings thereof."

>For class 014: "Horological and chronometric instruments; watches; clocks; wrist watches; electric watches and clocks; electronic watches and clocks; replacement parts and fittings thereof; chronographs as watches; stopwatches; timekeeping instruments; clock and watch parts, namely, cases; watch bands and straps; clock and watch parts, namely, dials; clock and watch hands; watch faces; watch movements; watch glasses; watch chains; watch boxes; watch pouches; watch springs; watch crystals; watch back covers."

Class 014 is known to be inapplicable for smartwatches. *See* Aggarwal Decl. ¶ 7, Ex. 4 (explanatory note from Nice Classification - 11th Edition, Ver. 2020) ("[Class 14] does not include, in particular: smartwatches (Cl. 9).")[6] In fact, the trademark office has classified smartwatch accessories such as bands and protective case under class 9, not under class 14. *See id.* at ¶ 8, Ex. 5 (USPTO Trademark ID Manual entries respectively for "smartwatch band" and "smartwatch case"). The Class 9 goods registered under the "protection" mark, on the other hand, do not include accessories such as bands or protective cases. It follows, therefore, that Amband's accused product is not a counterfeit as a matter of law because Casio has not registered the goods under the asserted "protection" mark.

Finally, it is worth noting that the Complaint has alleged that Casio is known for its *digital watches*. *See* ECF # 1 ¶¶ 3, 9, 14. The Complaint has not alleged that Casio has ever offered to sell, sold, or distributed any smartwatch accessories. One who visits the website at https://www.casio.com/intl/ (the official source of Casio products) is not able to find any

---

[6] The explanatory note is also available at https://www.uspto.gov/trademarks/trademark-updates-and-announcements/nice-agreement-eleventh-edition-version-2020-general. The USPTO further explains that "the international classification of goods and services is the controlling classification system used by the United States and applies to all trademark applications filed on or after September 1, 1973 and their resulting registrations for all statutory purposes." *See* https://www.uspto.gov/trademarks/trademark-updates-and-announcements/nice-agreement-current-edition-version-general-remarks.

marketing material or product offering regarding smartwatch accessories. Aggarwal Decl. ¶ 9, Ex. 6. This provides an additional and independent reason that the accused product is not a counterfeit because there are no genuine "protection" branded smartwatch accessories for Defendant to imitate. *See Antetokounmpo*, 2021 U.S. Dist. LEXIS 200681, at *7-8 (finding no counterfeiting activity because "there is no 'original' product of the plaintiff's for the defendants to imitate: a reasonable consumer would not be tricked into thinking he or she is buying a genuine [product] because there is no such thing."); *accord Chi. Mercantile Exch. Inc.*, 2021 U.S. Dist. LEXIS 154686, at *47 ("Often, counterfeit merchandise is made so as to imitate a well-known product ... so as to deceive customers into thinking that they are getting genuine merchandise.") (*quoting* 5 McCarthy on Trademarks and Unfair Competition § 25:10 (5th ed. 2020)).

### C. Plaintiff Has Not Demonstrated a Likelihood of Success for its Trademark Infringement Claim

Plaintiff contended that it demonstrated some likelihood of success for the trademark claim because its allegations of counterfeiting enabled Plaintiff to "plainly satisf[y] the likelihood of confusion test." *See* ECF # 12 (TRO Memo) at PageID # 98.[7] However, Plaintiff performed no legal analysis in the TRO memorandum to establish why each defendant's products were counterfeits. *See id*. at PageID ## 88, 96-99. Instead, to establish trademark infringement, Plaintiff conflated its counterfeiting claim with its likelihood of confusion analysis. *See id*. at PageID ## 96-99 (applying a seven-factor analytical framework set forth in *Eli Lilly & Co. v. Nat. Answers, Inc*., 233 F.3d 456 (7th Cir. 2000)). Because Plaintiff's counterfeiting claim

---

[7] The PI Order governing Amband is based on facts and arguments Plaintiff presented in its TRO and PI motion. ECF # 42. Plaintiff presented a likelihood of confusion analysis in the TRO motion. *See supra* n. 1.

against Amband fails as a matter of law, and for the additional reasons that Defendant presents below, Plaintiff has failed to make a showing of likelihood of success for its trademark infringement claim.

        1.     *Eli Lilly* factor (1) - "similarity between the marks in appearance and suggestion"

Plaintiff contended that this factor is met because "Defendants are selling Counterfeit CASIO Products." ECF # 12 (TRO Memo) PageID # 98. Plaintiff's argument is not availing because Amband was not selling counterfeits for reasons stated above. *See supra* § II.B. More importantly, Amband's Walmart listing prominently displays its house brand "amBand." The listing title describes the product as "amBand Bands Case Compatible with Apple Watch. . ." *See* Aggarwal Decl., Ex. 1. Immediately above the title is a link inviting consumers to visit the "Amband" page listing all amband products offered for sale on Walmart.com. *See* Aggarwal Decl., Ex. 1 at pg. 1. The product specification information posted on the listing page further confirms that "amband" is the manufacturer and the brand. *See* Aggarwal Decl., Ex. 1. The "protection" mark, on the other hand, is placed in a demo product photo and not found anywhere in the Walmart listing page or production descriptions. This factor thus favors no likelihood of confusion.

        2.     *Eli Lilly* factor (2) - "similarity of the products"

Plaintiff contended that this factor is met as "Defendants are selling Counterfeit CASIO Products." ECF # 12 (TRO Memo) at PageID # 98. Plaintiff's argument is not availing because Amband was not selling counterfeits. *See supra* § II.B. Moreover, Plaintiff sells *digital watches*; Amband sells *accessories* specifically designed for Apple smartwatches. This factor thus favors no likelihood of confusion.

       3.      *Eli Lilly* factor (3) - "the area and manner of concurrent use"

Plaintiff contended that this factor is met because "Plaintiff and Defendants show the same products using CASIO Trademarks to the same consumers." ECF # 12 (TRO Memo) at PageID # 98. Plaintiff's argument is not availing because Plaintiff gets the facts wrong. Amband was selling an accessory designed specifically for Apple smartwatches. Cao Decl. ¶ 7 & Ex. 11; Aggarwal Decl., Ex. 1. It is targeted at consumers in the market for accessories. Plaintiff's products are digital watches. ECF # 1 at ¶¶ 3, 9, 14. The Casio digital watches are known for their iconic style and tough builds. Aggarwal Decl. ¶ 10, Ex. 7. It is unlikely that a Casio consumer would buy an accessory such as a bumper case to complement his or her Casio digital watch. This factor also favors no likelihood of confusion.

       4.      *Eli Lilly* factor (4) - "degree of care likely to be exercised by consumers"

Consumers purchasing cell phone cases with varying design choices and price points are likely to exercise a higher degree of care. *Uncommon v. Spigen, Inc.*, 305 F. Supp. 3d 825, 861 (N.D. Ill. 2018). Similarly, customers purchasing protective cases for Apple smartwatches are likely to exercise a higher degree of care. The Casio watches bearing Plaintiff's "G-Shock" and "Protection" marks have iconic styles. Aggarwal Decl. ¶ 10, Ex. 7. The watches can cost from tens to hundreds of dollars. *Id.* at ¶ 11, Ex. 8. Because of the variety of the product offerings, the degree of care exercised by consumers for Casio products is also likely high. The fourth *Eli Lilly* factor thus favors no likelihood of confusion.

       5.      *Eli Lilly* factor (5) - "the strength of complainant's mark"

With respect to the fifth *Eli Lilly* factor, a mark's strength depends upon two elements. The first is how inherently distinctive is the mark based on where the mark falls on the spectrum between a generic mark and an arbitrary mark. The second looks to whether the public consider the mark to indicate a particular source, or if the mark is subject to wide and intensive

advertisement, or both. *Uncommon*, 305 F. Supp. 3d at 861. Neither element favors a finding of likelihood of confusion.

The "protection" mark is descriptive because it describes a characteristic of the product. Casio's G-Shock line of products have iconic styles known for their toughness. Aggarwal Decl. ¶ 10, Ex. 7. The accused bumper case product serves the function of protecting smartwatches from damage. Aggarwal Decl., Ex. 1.

Plaintiff asserted that the "protection" mark is strong because the CASIO trademarks enjoy "long-standing use and wide acceptance." ECF # 12 (TRO Memo) at PageID ## 98-99. Plaintiff's conclusory remarks carry no persuasion because Plaintiff has offered no evidence showing how the alleged wide acceptance is directed at the "protection" mark. After all, the mere success of a product in the marketplace, without evidence linking its success to the mark at issue, does not establish the strength of the mark. *See Uncommon*, 305 F. Supp. 3d at 862. It appears the success of the Casio products is attributable to consumer's recognition of the famed G-Shock mark. A product search for "G-Shock watch" on walmart.com returns 285 product hits where Casio watches are placed as the first eight search results. Aggarwal Decl. ¶ 11, Ex. 8. The same search for "protection watch" returns 378 hits yet *none* of the first eight search results are Casio or G-Shock branded watches. *Id.* at ¶ 12, Ex. 9. The lack of recognition for the "protection" mark is further evident from Casio's own marketing campaign. The G-Shock brand is placed prominently on the official Casio website; a "protection" brand is conspicuously missing. *See id.* at ¶ 9, Ex. 6 (the list of watch sub-brands starts with "G-Shock" but does not include "Protection").

      6.    *Eli Lilly* factor (6) - "the actual confusion"

Plaintiff's pleadings fail to allege even a single instance of consumer confusion. Plaintiff contended that it does not need to show evidence of actual confusion because "Defendants are

selling Counterfeit CASIO Products in connection with CASIO Trademarks." ECF # 12 (TRO Memo) at PageID # 99. Plaintiff's argument is not availing because Amband was not selling counterfeits. *See supra* § II.B. Because Plaintiff has failed the burden of presenting any evidence of actual confusion, this factor favors Defendant.

> 7. *Eli Lilly* factor (7) - "intent of the defendants to palm off their products as that of another"

With respect to this factor, Plaintiff made the conclusory remark that Defendant was "purposefully attempting to benefit and trade off Plaintiff's goodwill and reputation" but provided no supporting evidence. ECF # 12 (TRO Memo) at PageID # 99. The actual evidence, on the other hand, suggests that Defendant used the word "protection" in its descriptive sense and used it in good faith. The accused product is a protective case for smartwatches. Aggarwal Decl., Ex. 1. Defendant did not use the word as a source identifier or try to palm off Casio's goodwill, if any, in the "protection" mark. Instead, the Walmart listing page prominently displays Defendant's own house mark amband. *Id.* at Ex. 1. A stylized "amband" mark is also depicted conspicuously in the product packaging. *See* Cao Decl., Ex. 11. This factor therefore also favors a finding of no likelihood of confusion.

To summarize, because none of the "likelihood of confusion" factors favors Plaintiff, the Court should dissolve the PI Order.

**D. Plaintiff Has Not Demonstrated a Likelihood of Success for its Remaining Claims.**

Plaintiff's remaining claims derive entirely from Plaintiff's allegations of trademark infringement and counterfeiting. For example, Plaintiff alleges: "By using Plaintiff's Trademarks in connection with the sale of counterfeit products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of

12

Case: 1:24-cv-11010 Document #: 61 Filed: 12/19/24 Page 13 of 15 PageID #:2727

the counterfeit products." ECF # 1 ¶ 40. Plaintiff further alleges that Defendant engaged in violations of Illinois uniform deceptive trade practices act as "Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit products as those of Plaintiff, causing likelihood of confusion and/or misunderstanding as to the source of its goods, causing likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates likelihood of confusion or misunderstanding among the public." *Id.* at ¶ 48. Because Plaintiff's trademark infringement and counterfeiting allegations fail for reasons stated above, there is no likelihood of success for these claims either.

### III. Alternatively, the Court Should Modify the Asset Restraint Based on Evidence of Defendant's Profits.

For the procedural and substantive reasons stated above, Amband believes the PI order should be dissolved. To the extent the Court is not inclined to dissolve the PI Order, the Court should at a minimum modify the PI Order and significantly reduce the amount of asset restrained, for the following reasons.

Courts "generally do not have the authority to preliminarily restrain assets where a plaintiff seeks a money judgment." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 2013 U.S. Dist. LEXIS 205985, at *4 (N.D. Ill. Oct. 30, 2013). Asset freeze is permitted only to "preserve the equitable remedy of an accounting for profits." *Luxottica Grp. S.p.A. v. Zhiqiang Zhao*, No. 16 C 7988, 2017 U.S. Dist. LEXIS 38527, at *21-22 (N.D. Ill. Mar. 17, 2017) (granting a lift of asset freeze where Plaintiff opted to seek statutory damages only). *Accord Klipsch Grp., Inc. v. Big Box Store Ltd.*, 2012 U.S. Dist. LEXIS 153137, at *13-15 (S.D.N.Y. Oct. 24, 2012) ("However, contrary to Plaintiff's assertion that it may seek

13

to have the Defendant 'account for damages' …, case law in the Second Circuit confines the accounting to which 15 U.S.C. § 1117(a) entitles a Lanham Act plaintiff to a defendant's *profits*.") "[I]f the amount of the profits is known, then the asset freeze should apply on[ly] to that specific amount, and no more." *Id*.; *see also Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 U.S. Dist. LEXIS 205985, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013). ("[T]he appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief."). A defendant seeking relief from the asset restraint carries the burden "to present documentary proof that particular assets are not the proceeds of counterfeiting activities." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) (quotation marks and brackets omitted).

Here, Defendant has a Payoneer financial account linked to the Amband Walmart store. Cao Decl. ¶ 13. The amount of assets restrained in the Payoneer account is approximately $312,002.31. *Id.* However, Amband made less than $5,000 in sales proceeds of the accused product including its variations. *Id.* at ¶ 12, Ex. 12. The total units sold are approximately 85 pieces. *Id*. The profits made from these sales are less than $5,000. *Id*.

Based on the foregoing and the supporting documentation submitted herein, Amband respectively requests that the Court grant an alternate relief of modifying the PI Order by reducing the asset restraint to a total amount of $5,000.

## IV.     CONCLUSION.

WHEREFORE, for the foregoing reasons, Defendant No. 186 (Amband) respectfully requests that the Court dissolve the preliminary injunction order, or in the alternative, modify the assets restraint to reduce the maximum amount of assets restrained to be $5,000 or less.

Dated: December 19, 2024          Respectfully Submitted,

By: /s/ Hua Chen

Hua Chen
SCIENBIZIP, P.C.
550 S. Hope Street, Suite 2825
Los Angeles, California 90071
Telephone: (213) 426-1771
huachen@scienbizippc.com

Attorney for Def. No. 186 Amband